The next for this morning is number 19-13448 Matamoros v. Broward Sheriff's Office. May it please the court, Peter Hogwart on behalf of the appellant, Carolina Rose Matamoros. You may begin. Thank you, Your Honor. We make four main points in our brief the first and probably significantly because we're arguing for a change in the law at least as it pertains to the law that's currently been interpreted as it pertains to the Florida Civil Rights Act in the district court. The district court erred in granting defendant's motion to dismiss as to plaintiff's associational disability claims by declining to construe the Florida Civil Rights Act liberally and in conformity with the Americans with Disabilities Act. Mr. Hogwart, can I ask you just a quick question about number one? I understand you've got other points but as to number one if you're asking us and I appreciate the candor but if you're asking us to change Florida law that's just like not up to us to do. I mean I think we've said time and time and time again that federal courts ought not to get in front of state courts in terms of devising causes of action. It just seems to me that that's a question that has to be put before the courts. I agree, Your Honor. Candidly, we expected this court to perhaps ask the Florida Supreme Court for an advisory opinion on it. Not sure how that works procedurally but the argument that we're advancing is that the district court erred in making that interpretation that the Florida Civil Rights Act does not extend associational disability claims to plaintiffs such as Ms. Matthew Morris. But just so I'm clear, sort of as things stand before us, you concede that under Florida law as it currently exists there is no associational claim. I think that there is an associational claim and I think that claim exists because of cases like Joshua, a Supreme Court case that held that the Florida Civil Rights Act is to be construed liberally and because of the interpretation of the Pregnancy Discrimination Act as held in the case of Dulva v. Continental Group, which is cited in our reply brief. And in Dulva v. Continental Group, the court held that because even though the pregnancy discrimination is not specifically enumerated as one of the categories of protected classes within the Florida Civil Rights Act, because the Florida Civil Rights Act is modeled after Title VII and pregnancy discrimination is an amendment and included in Title VII, that by analogy the other categories of protected classes under Title VII, including disability discrimination and those associated with people who have disabilities. You see, but the problem that I'm having with the argument is just what you said. In Dulva, the Florida legislature added pregnancy to the protected groups in 760.101a and therefore the Florida Supreme Court held in Dulva that the prohibition on discrimination based on sex includes discrimination based on pregnancy. The problem is, and you can help me with it, I can't find anything in Florida law that suggests or would enable me to predict that the Florida Supreme Court would read this associational claim into the Civil Rights Act. The text of the statute doesn't get you there. To the extent we look at the text, it seems to me to cut in the other direction. And so I would need something in Florida law to tell me their decisional arc is going in that direction, even if they haven't quite gotten there. And I guess I don't see anything that says that. Am I missing something in Florida law? Well, the language of the statute itself, your honor, says that the statute is to be liberally interpreted. Well, but in fairness, I mean, before we get to the liberal construction provision, I mean, let's look at the operative terms of the statute that you're looking at, that you're suing under. Prohibits employers to discharge or fail to refuse to hire any individual or otherwise to discriminate against any individual with respect to compensation terms or conditions or privileges of employment because of such individual's handicap. And then contrast the ADA, which says sort of like all of that, plus or any individual's association with someone else who is disabled. Again, your honor, the Title VII focuses on certain categories of discrimination, and the Florida Civil Rights Act is modeled after Title VII. Indeed, under Title VII, there are exist claims for race discrimination and associational discrimination against people who are affiliated with members of that race, even though the text of Title VII itself does not specifically outline associational discrimination as a result of race, but the case law across the board states if somebody is married or affiliated with a person of a different race, that Title VII protections extend to that person as well. So by analogy, and in keeping with the construction of that, the liberal interpretation of the statute to advance promotion of civil rights, by analogy, it makes sense. What do you suppose the legislature meant, the Florida legislature, when it said specifically it prohibited discriminating against any individual because of such individual's handicap? Handicap is not defined. The trouble that I have is not with the definition of handicap. You're certainly right that it doesn't define the term handicap at all, and so if that's where we were going, I think there might be more room to maneuver or argue, but the term I'm asking you to help me with is discriminating against any individual because of such individual's handicap. Doesn't that tell us they're referring to the particular individual with the handicap? What does such individual tell me? Well, such individual, again, I defer to the lack of a definition of handicap. A handicap could also be being associated with somebody with a disability. That person, indeed, that is not defined by, that term is not defined by the statute, and such individual with a handicap could be somebody who is associated with somebody with a disability, which is not defined within the statute. And again, the case... Can I just push back on that a little bit? I mean, is there any reasonable understanding of the term either handicap or disability in which, in ordinary parlance, we would think that someone is disabled or handicapped because that person is related to or associated with someone else who is, in fact, physically or mentally disabled or handicapped? The Florida Civil Rights Act follows Title VII, and Title VII defines disability, and the disability is defined within the case law that we cite in our brief in terms of affecting the life conditions, the person's ability to walk, affecting major life activities. I mean, I guess, just to make this concrete and personal, frankly, for me, I had a sister who died 15 years ago who was profoundly mentally and physically retarded, but I don't think that either my mother, who raised the two of us, or me, I don't think anybody would say that either of us was disabled or handicapped. I mean, just in ordinary speak, in the way that people talk, that just doesn't sound right to me. I understand your interpretation, Your Honor, and the question is addressed to such individuals. The case law following Title VII is that people who are  are protected under the law, and in keeping with the liberal interpretation of the Florida Civil Rights Act, that that should also extend to people who are caring for disabled individuals under the Florida Civil Rights Act. Okay, I hear you. Thank you. All right, so, where are we on time? I'll yield my time for the response. Thank you, Ms. Payne. I apologize. Gail Ciceric Payne, appearing on behalf of the defendant appellee, the Broward Sheriff's Office. Before I get to this substantive issue, I would like to point out that in this case, the order dismissing the disability by association discrimination claim under the Florida Act was dated June 8th of 2019, record docket number 20. That is after the complete close of all the discovery in this case. The parties had complete discovery on the substance of this claim because the dismissal had not been entered into, and the full discovery on this record unequivocally evidenced no discrimination, disability discrimination by association. But let's get to the meat of the issue here. The court is correct that the Florida statute simply is just not ambiguous on the case. It's clear on the clear language of the statute that it only covers disability discrimination against an individual based on that individual's discrimination. I'm sorry, disability. There are many instances the ADA does provide for associational disability. The Florida statute expressly excludes it, and the doctrine of expressio unios exclusio ulterior dictates that the clear expression by the Florida statute that it only covers discrimination against an individual because of such an individual's handicap implies the exclusion of any associational disability. Now the ADA and the federal and the federal courts in many respects not just on the associational disability claim. For example, they have completely different remedial structures. The ADA by way of monetary damages only allows for back pay. The Florida Act 760.115 allows quote, damages for mental anguish, loss of dignity, and any other intangible injuries and punitive damages. The Florida Act even specifies that the heightened burden of proof requiring clear and convincing evidence to establish punitive damages as per 768.72 doesn't apply. So, how do you account for the fact that all of our cases analyzing the FDRA seem to read it the same or say use the same framework as the ADA? Well, what they mean by using the same framework is not that you read that both of the statutes have to say the same language. For example, nobody would seriously argue that under the ADA, if they're analyzed under the same framework, that the ADA ought to allow for the more expansive remedies that the Florida statutes apply. My question is, what do you think that language means? I think in two situations applied to this case, applying the same analytical framework would mean. One, when you're applying the same analytical framework, that means that you apply the McDonnell-Douglas burden shifting analysis, which the court below did in detail. It did it with respect to the FMLA retaliation claim, but it looked at all of the complaint of employment actions that were made by the defendant and did the McDonnell-Douglas burden shifting analysis and determined that all of defendants employment actions were legitimate, non-discriminatory, and non-protectual. The second aspect of sharing the same analytical analysis would be, let's take your precedent in Hilburn, the 11th Circuit's precedent in the Hilburn case, which construed an ADA case for associational disability. It determined that the plaintiff was not entitled to a modification of their work schedule, even to allow for the care of a child. So in applying that common analysis, it's just not actionable here to claim that the defendant failed to accord the plaintiff a part-time status in order to care for her son. It's interesting that the appellant relies on the Joshua case to say that the statute should be liberally construed. The Joshua case construed the statute of limitations in a remedial statute and said it needed to be liberally construed. It has nothing to do with, no liberal construction, no matter how liberal it can be, can interpret the Florida statute to include somebody's individual handicap to be based on the handicap of somebody else, without language saying as such, which is what the ADA did. Is this a question that we should consider certifying to the Florida Supreme Court? No, your honor, I don't believe that it should be, because there just really isn't any context here. The 11th Circuit, back in 2000, certified in the Denata versus AT&T case, 767 Southern 2nd 1146. It asked the Florida Supreme Court with regard to a marital status case. In that case, the discrimination was not based on the individual's activities, but was based on the individual's spouse's identity of their spouse and the complaining conduct of the spouse, and the Florida Supreme Court said, no, that doesn't fall within our purview which is that the marital status discrimination or handicap discrimination or any other type of discrimination that it's talking about has to be based on that individual's own status. The case law, the DELVA, the PAR decision, the Title VII cases that the appellant cites actually work in favor of the appellee in this case. In all of those Title VII cases, the court found that those claims had to be covered and were only covered when it was based on the complaining individual's own race or sex. The court in PAR and Petro found that if an individual was discriminated against because they married somebody who was biracial or because they had a biracial child, that was tantamount to discrimination against that individual based on their race. The same thing in the DELVA decision by the Florida Supreme Court. The Florida Supreme Court held that if a complainant complains that they are discriminated against because they're pregnant, that is based on the complainant's own sex because pregnancy is the natural condition and primary characteristic. I believe those were the terms that were used, unique to the female sex. So all of these Title VII cases that we're trying to analogize still require the court to find that the discrimination based on the individual complainant's own protected status, not the status of somebody else. So the DENATA decision, the Florida Supreme Court and DENATA versus AT&T, as I pointed out, found that in marital status it could not be based on the activities of the spouse because that wasn't based on the individual. There's no statutory construction that can logically construe the handicap of someone else to be based on an individual complainant's handicap unless the statute expressly said so, which is why the ADA did it and why the Florida statute absolutely didn't do it. Now I want to quote to you the exact language from the Florida statute pertaining to its liberal construction. 760.013 states that the act quote shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved. So under 760.013 no construction, other construction can accord the fair import of the terms of the Florida statute. When the court reads the entire provisions of a statute in pari materia, the cardinal rule of statutory construction is that all the provisions need to be construed in a way that harmonizes all of its provisions and violates to none of them. So just grafting the language of the ADA's associational disability provision onto the Florida statute that specifically doesn't apply it is just incorrect. The court applied the McDonnell-Douglas burden shifting analysis in this case and as the briefs have detailed and determined that all of the employment actions of defendant were justified, were not false, there was no pretext, they were legitimate. You know I'd like to point out that plaintiff didn't meet its burden of showing pretext. Nowhere did the plaintiff present any evidence that any violations of the plaintiff were falsely reported, were falsely investigated, were falsely decided by the autonomous professional standards committee. There was no, there was nothing false with respect to any of the employment actions. But even if somehow the statute, the Florida statute had included associational disability, the full discovery on this record and the brief goes into it gives you four independent reasons of why it's not on the record. First of all, the part-time position that was denied plaintiff was given to somebody who was known to have a serious medical condition and was known to be the sole caregiver of his elderly disabled father. So by definition, defendant could not have denied plaintiff the part-time position because she was presumably or allegedly associated with her disabled son. Secondly, under the Hilburn mandate, all the plaintiff supervisors, all of the internal affairs investigations and the professional standards committee that that autonomously decided this. They all unequivocally attested on this record, it's in paragraphs 20 and 21 of the undisputed facts in the motion for summary judgment, that all of plaintiff's investigations sustained violations of policy and her disciplines were based exclusively and completely on her past demonstrated infractions of BSO neutral policy of attendance, truthfulness and approved outside employment and not on any belief consideration and or assumption of any future absence infraction or distraction. A third reason is that the shifting analysis, which is the shared analytical framework between the two statutes and determine that all of defendant's employment actions were legitimate, non-discriminatory and non-protectional. In fact, in appellant's reply brief, they do not address any of those issues whatsoever that were raised in the appellee's answer brief. The only thing that's raised is this also the evidence after full discovery also unequivocally established that everybody at the sheriff's office or supervisors, the independent internal affairs investigators and the professional standards committee, they all attested without refute that they were aware of nothing regarding the health of plaintiff's children that led them to think or believe that any of them were disabled. So even if somehow her supervisors knew about this, we have a disconnect because the autonomous professional standards committee that decided whether or not to sustain the violations against her had no knowledge of this. Under the McDonnell Douglas Burden analysis, I'd just like to briefly go through that. Plaintiff admitted in all seven of her internal affairs cases, she admitted to all of her attendance infractions. Every single one of her performance evaluations point out that she needs improvement in the area of attendance and punctuality. There's no question that plaintiff lied under oath when asked in her seventh internal affairs investigation whether or not she had any quote any other outside employment, she denied it. The internal affairs investigator independently found out that plaintiff at the same time was working for the city of Miami. She had worked there 1,165 hours, almost 200 more hours than she'd shown up during that same year for the sheriff and 17 days of which on the calendar day that she didn't show up for work for the sheriff, she had shown up for work instead for the city of Miami and had earned almost $25,000 from the city of North Miami. The defendant even established other people that had lesser disciplinary histories and violations that were terminated. The plaintiff offered no evidence of any individually individual similarly situated that was treated the same. The order of dismissal and the judgment below should be affirmed. Thank you. So who, Gord, do you have some rebuttals? You're muted, counsel. Thank you, your honor. This court should refer this matter to the Florida Supreme Court, certify this matter for to the Supreme Court, Florida Supreme Court for an opinion. The legislature expressly directed the Florida Civil Rights Act be construed liberally for the accomplishment of its purposes at subsection three of the statute and while counsel contends Joshua does not apply, the holding of Joshua is that chapter 760 is remedial and requires a liberal construction to preserve and promote access to the remedy intended by the legislature. That's arrow error and that is cited in our brief. As to the contention that there were sufficient facts to allow the lower court, the district court, to enter summary judgment, I only need to point to the record which is docket entry 32-18, an email from Joanne Alvarez to her co-workers who we allege discriminated against my client Lisa Zarazinsky and Latasha Amidali that says basically that Carolina should have received her role within this Broward Sheriff's Office to to allow her to work part-time. We are not asking the court to find that my client was not accommodated because of a part-time schedule. We are asking the court to find that the Florida Civil Rights Act should apply to her associational disability claim which we never got a chance to argue was dismissed before we were allowed to proceed with discovery in this action. To say that... Can I ask you a quick question Mr. Hubbard? What is the standard by which we will decide whether to certify something? My impression has always been that before we up and certify something we ought to be pretty doggone uncertain about the result and here it just seems to me the language of the statute for good or ill this may be the right result of the bad result of the wrong result but the language of the statute especially in just position to the ADA pretty squarely forecloses this associational claim and so we don't certify to the board of supreme court just so that it can innovate. We only certify to a state supreme court when we are left sort of totally uncertain about what the result under state law should be. Understood. We are asking the court to review the facts of this case in the entry of summary judgment and the motion to dismiss to no vote and we allege in our brief that there are enough facts there. I mean we're talking the district court entered summary judgment on two affidavits. My client testified that she did not knowingly you know tell the investigator a lie and that because the cat's paw theory that we advanced that Al-Madawi and the other and Terinsky were able to influence the board in making their determination and because of the associational discrimination because of her son's disability, asthma, that they discriminated her and reduced her hours, reduced her ability to get FMLA, reduced her ability to get the hours so that she testified that she needed a second job to make ends meet. This is clear a case of discrimination and I would also point to the case of Bostwick that we cite in our reply brief which came out that also discusses the differences between Title VII and race discrimination. It cites to a case Holcomb versus Iowna College. I encourage the court to take a look at that that's cited in the Bostock versus Clayton County, Georgia because Title VII extends associational discrimination to other categories of for race discrimination even though it's not expressly in the statute and the case law.  You can finish your sentence. I didn't mean to cut you off. I would just encourage the court to look at the Supreme Court case of Bostock because it turned the definition of sex discrimination on its head even though it wasn't clearly elucidated in the statute. The Supreme Court extended that and discusses within that that Title VII also extends associational discrimination to categories that are not included in Title VII and the case law on the Florida Civil Rights Act is modeled after Title VII. Thank you. Court will be in recess until 9 a.m. tomorrow morning. Thank you.